**David Sean Kerr**
404 Prospect Ave Apt 2
Brooklyn, NY 11215
Tel.: (917) 523-3267
**Plaintiff in Pro Per**

**ORIGINAL**

IN THE UNITED STATES DISTRICT COURT
FOR EASTERN DISTRICT OF NEW YORK

RECEIVED
FEB 16 2018
PRO SE OFFICE

| | |
|---|---|
| **DAVID SEAN KERR,** | |
| Plaintiff, | **COMPLAINT FOR CIVIL CASE** |
| -against- | Case No. **CV 18 - 1033** |
| **BANK OF AMERICA CORPORATION,** | **JURY TRIAL NOT REQUESTED** |
| Defendant. | **KUNTZ, J.** **MANN. M.J.** |

Plaintiff David Sean Kerr ("Kerr" or "Plaintiff"), in pro per, as and for his complaint against Bank of America Corporation ("BofA" or "Defendant"), alleges as follows:

## NATURE OF THE ACTION

1.      Kerr brings this action against BofA to redress unlawful negligence and defamation by implication in relation to his post-employment status as described in BofA's Human Resource Department's ("HR") database, and further communicated to outside 3rd parties in violation of any applicable Federal Law.

2.      Specifically, Kerr suffered economic, reputational and emotional damage from the nation's largest bank and brokerage firm.

3.     BofA failed and continues to fail to exercise a duty of care in the administration of its employee database and communications about its employee records with outside 3rd parties regarding its former employees.

4.     At all times relevant herein, Defendant's employees, managers, and Human Resource specialists acted at the behest of Defendant during the course, and within the scope, of their employment with Defendant.

5.     As more specifically set forth herein, BofA's blatant negligence toward Kerr has resulted in diminished employment opportunities with other employers, damage to his reputation within, among other business enterprises, the financial services industry.

6.     Beneath the veneer of a world-class financial institution, BofA treats its customers and employees with blatant reckless disregard. Plaintiff Kerr is no exception. Incredibly, as evidenced by a ceaseless stream of lawsuits, judgments, out-of-court settlements, and extremely critical and damning news reports thus far, BofA shows little if any indication of a sincere desire to change its behavior.

7.     Kerr seeks compensatory and punitive damages, and injunctive and declaratory relief.

## PARTIES

8.     Plaintiff Kerr lives at 404 Prospect Avenue, Apartment 2, Brooklyn, New York 11215. He is a citizen of the United States.

9.     Upon information and belief, Defendant BofA is a Delaware corporation and maintains corporate headquarters within the City and County of Charlotte-Mecklenburg at Bank of America Corporate Center, 100 N. Tryon St., Charlotte, North Carolina 28255.

10. Upon information and belief, Defendant BofA maintains control, oversight, and direction over the operation of its facilities, including its employment administration practices.

11. During all relevant times, Defendant BofA was Plaintiffs' employer within the meaning of all applicable statutes.

## JURISDICTION AND VENUE

12. This Court has original jurisdiction over Plaintiff's claims pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between citizens of different states.

13. The Plaintiff, David Sean Kerr is an individual and a citizen of the State of New York.

14. The Defendant, Bank of America Corporation, is incorporated under the laws of the State of Delaware, and has its principal place of business in the State of North Carolina.

## STATUTE OF LIMITATIONS

15. The statute of limitations accrual commences on July 19, 2017, the date Kerr discovered his injury pursuant to New York Consolidated Laws, Civil Practice Law and Rules - CVP § 203 (g) 1.

16. Kerr could not reasonably have been aware of neither BofA's negligence nor any need to question his employment record there until his discovery of harm.

17. According to BofA's agents, BofA does not know when its decision to deem Kerr ineligible for rehire was made, who made the decision, or when that information was recorded in Kerr's employee record.

## FACTS COMMON TO ALL COUNTS[1]

### PERSONAL AND PROFESSIONAL BACKGROUND

18.     Kerr graduated from Memphis State University with a Bachelor of Business Administration in Finance in 1993.

19.     Upon graduation, Kerr immediately commenced working in the financial services industry for REFCO, Inc., a Treasury futures brokerage at the Chicago Board of Trade.

20.     From 1994 until 2010, Kerr was employed by several other financial services companies, specifically Rumson Capital Management, Deutsche Bank AG, Prudential Financial, Merrill Lynch International ("MLI"), Bear Stearns & Co. ("BS"), Goldman Sachs and Commonwealth Bank of Australia.

21.     Kerr has been recognized as an exemplary employee at MLI by being promoted to one of its executive leadership programs for outstanding employees, and at BS for the rare opportunity of being promoted from the back office documentation trade support group to the Structured Credit Derivatives Trading Desk in the role of derivatives trader, based solely on merit.

22.     Kerr has excellent professional references from his former supervisors as well as principles at his previous employers.

23.     Prior to employment with BofA, Kerr completed the course work required by the Project Management Institute's examination for the Project Management Professional certificate, commonly designated as PMP ("PMP").

---

[1] All directly quoted statements, unless otherwise specified, are the sum and substance of such statements as recalled by Plaintiff.

24. Kerr served in various project management roles including project manager at his previous employers.

25. In March of 2011, Kerr was offered the opportunity to interview for a project management role with BofA by Michael Page International ("MPI") through its representative Keri Miller ("Miller").

26. Upon information and belief, MPI is a British-based provider of permanent, contract and temporary recruitment for clerical professionals, qualified professionals and executives for the financial services industry.

27. Kerr was offered a contract to work for BofA by MPI after several interviews at BofA with BofA's agent employees.

28. Kerr's position as Project Manger for Equity Initiatives and Finance Integration at BofA was confirmed by MPI on March 16, 2011.

29. Kerr's employment start date was March 21, 2011, pending completion of a background check. Kerr passed the background check.

30. Kerr's contracted hourly pay rate was $71.42 ("Pay Rate") with overtime paid at time and a half after 40 hours per week.

31. Kerr was contracted to specifically work on an information technology project called the Intercompany Reconciliation Tool known internally as "ICO" or the "ICO project" ("ICO").

32. ICO was a long-term project and was then in its third year of duration when Kerr's employment began.

33. ICO was an administrative tool which among other technologies, made use of the Microsoft Excel workbook ("Excel"), a commercial, off-the-shelf software

application used by millions of businesses, students and household consumers around the world.

34.     Excel is a very common and popular software application.

35.     ICO utilized its Excel component's standard feature of Visual Basic macro programming capabilities to connect to an external database to administer internal transaction records.

36.     Upon starting employment, Kerr reported to James M. Jardinella ("Jardinella").

37.     At all times relevant, Kerr worked under identical circumstances as BofA's regular employees.

38.     Kerr's responsibility was to verify the accuracy and data quality used by the Excel component, and to train users to utilize the comprehensive tool.

39.     Jardinella left BofA a few months later after being hired by another corporation.

40.     Kerr was placed under the supervision of Michael Zullo ("Zullo"), Senior Vice President, Tech Products, BofA.

41.     At all times relevant, Zullo was based at the BofA offices in Princeton, New Jersey, but he also worked in the New York office and interacted with Kerr in person.

### CIRCUMSTANCES REGARDING KERR'S TERMINATION

42.     On or about December 1, 2011, BofA's project management office terminated dozens of separate long-term information technology projects including ICO.

43.     Kerr continued working for BofA after the ICO termination.

44.    Kerr was aware that many of the terminated projects including ICO, were being replaced by a more comprehensive, robust and technically demanding custom developed software application using the Python software programming language.

45.    Kerr had no experience using Python or working in a Python software development project environment.

46.    On or about January 15, 2012, Zullo informed Kerr by telephone that his employment would terminate in two weeks.

47.    Zullo told Kerr that the specific reason for Kerr's termination was that BofA "needed a different skill set" for the subsequent replacement project.

48.    Neither Zullo, neither HR nor any other BofA agent gave Kerr a performance review or exit interview.

49.    On or about January 24, 2012, fellow project team member and BofA full-time employee Paul Oldakowski ("Oldakowski") invited Kerr to a good-bye lunch.

50.    As a surprise, Oldakowski had invited several former and current team members, including Zullo, some of who came from other parts of the city and as far away as Princeton, New Jersey to attend.

### KERR'S POST BOFA PURSUIT OF EMPLOYMENT

51.    Subsequent to Kerr's departure from BofA, Kerr searched for other temporary contract positions through MPI and other 3rd party vendors as well as full-time positions directly with other employers.

52.    Kerr continued to communicate reciprocally with Miller regarding other potential contract opportunities.

53.    Miller left MPI a year later.

54.     Kerr and Miller continued to communicate over the years after she left MPI and was employed by other recruiting vendors.

55.     Kerr continued to communicate with other representatives of MPI who submitted him to other prospective employers.

56.     Kerr never achieved employment at any firms introduced by MPI.

57.     At no time during the communications and face-to-face interactions with Miller or other representatives of MPI subsequent to Kerr's termination by BofA, was there any impression or mention of any dissatisfaction by BofA.

58.     Over the ensuing years, Kerr was not successful in gaining a contract or full-time employment with other employers.

59.     Eventually Kerr applied for and received unemployment compensation from the state of New York.

60.     At all times, Kerr attempted to gain employment as a project manager or related position by submitting his résumé to potential employers.

61.     Eventually due to financial pressure, Kerr and his wife sold their home at 90 Guernsey Street in Brooklyn, New York in August of 2014.

62.     Kerr took the PMP examination and passed on the first try in December 2016.

63.     Kerr continued efforts to gain employment as a project manager or similar or related position.

64.     Kerr took the ScrumMaster ("CSM") certification examination and passed on the first attempt in May 2017. A ScrumMaster is a project management role leading

team members working on software development projects, including those working with the Python computer programming language.

65.     Kerr took the Agile Certified Professional ("ACP") project management certification examination and passed on the first attempt in July 2017.

66.     At all times, Kerr specified BofA as a previous employer on his résumé, email communications and employer job application websites.

67.     Despite acquiring several highly regarded project management certifications, Kerr was still unable to gain employment.

68.     It never occurred to Kerr that BofA was a contributing factor in his failing to gain employment.

### KERR DISCOVERS THAT HE IS NOT ELIGIBLE FOR REHIRE AT BOFA

69.     On July 18, 2017, Sunil Kumar ("Kumar"), an agent working for BC Forward, ("BCF"), a 3rd party information technology consulting firm located in Indianapolis, Indiana, contacted Kerr by email and telephone to discuss a new employment opportunity with BofA.

70.     BofA notified BCF that Kerr was ineligible for rehire.

71.     On July 19, 2017, Kumar notified Kerr that he was "not eligible for rehire" at BofA.

72.     Kerr was shocked to learn that BofA considered him ineligible for rehire.

73.     Kerr asked Kumar by telephone and email to provide the name and contact information of the BofA agent who provided the rehire information to BCF.

74.     Kumar informed Kerr that the only way BCF could communicate with BofA regarding Kerr's rehire status was by email.

75.    Kumar **refused** to provide the BofA agent's email address to Kerr.

76.    Kerr continued chasing Kumar for the next few days by telephone and email urging him to provide direct contact information with BofA.

77.    Kumar later provided the toll free number 1-800-556-6044 for BofA's Global Human Resources Service Center.

78.    Over the next several days Kerr attempted to contact HR through the telephone number provided by Kumar, but this telephone number was out of service.

79.    Kerr informed Kumar that the BofA number was either incorrect or out of service.

80.    Over the course of the following two weeks Kerr chased Kumar by telephone and email to get information regarding who the BofA agent was and how to reach that person by a different or direct telephone number and email.

81.    Kumar eventually promised that another BCF employee named Amelia would contact Kerr with the BofA agent's specific contact information.

82.    Amelia never communicated with Kerr.

83.    BCF stopped responding to Kerr.

### KERR CONTACTS BOFA'S HUMAN RESOURCES DEPARTMENT

84.    Kerr went to BofA's "Employee Resources at Home" website and determined that the telephone number was the same as provided by Kumar.

85.    Other than for benefits or bereavement, there was not a direct non-toll free telephone number listed, and the website's "Contact Us" dropdown menu only redirected visitors to other issues for numerous financial services unrelated to employee/human resources.

86.    BofA does not even provide a main corporate switchboard telephone number on its main corporate website; there is no email address provided; there are no "chat" services available with a virtual assistant.

87.    Kerr called the investor relations telephone number stated on various S.E.C. filings but aside for investor issues listed, callers are redirected to "**go visit our website at**" bankofamerica.com.

88.    Kerr attempted to find a direct number (non-toll free) for HR through numerous other BofA departments at various national offices found via random internet searches, but was met with automated recordings and opportunities to leave voice mails or schedule appointments.

89.    Not a single BofA agent responded to any of Kerr's voice mail messages seeking help.

90.    Kerr has a BofA credit card, and he called its customer service ("CC") for help in finding a direct HR contact telephone number.

91.    CC directed Kerr to the same HR toll free number described herein.

92.    On July 27, 2017 Kerr finally established direct communication with HR.

93.    BofA agent Levette answered and asked Kerr for his "person number", to which Kerr responded that he did not have one.

94.    Levette informed Kerr that BofA does not disclose the full name of its HR agents.

95.    Levette transferred the call to Linda in BofA's Employee Relations department ("ER").

96.     Linda verified that Kerr has an employee profile in BofA's human resource database system.

97.     Linda acknowledged that Kerr's record in the HR database stated that he was ineligible for rehire.

98.     Linda went on to state that the database record contained no information regarding who made the decision, what criteria was used to make the decision, when the decision was made, when the status was recorded in his employee record or any other information whatsoever beyond that Kerr was simply ineligible for rehire.

99.     Kerr asked for, but Linda refused to provide him with his "person number".

100.    Linda told Kerr that **"BofA has nothing to do with your ineligibility for rehire status."**

101.    Incredibly, Linda suggested that Kerr **"go to MPI to verify this issue".**

102.    Kerr responded **"that makes no sense for MPI to be the party to tell BofA that BofA should not rehire me"**, and then he said, **"I have clearly suffered damage here, and I will explore pursuing legal action."**

103.    Linda responded, **"Go ahead, sue us. It would be a waste of time, and you won't win."**

104.    Kerr demanded to speak with her manager.

105.    Linda placed the call on hold to speak with a manager, and returned to suggest that Kerr call ER again via HR after 5:30pm to pursue this matter further.

106.    Kerr called again at 6:14pm that same day.

107.    ER agent Yvonne informed Kerr that **"there is no information on file to verify that anyone at BofA designated you as not eligible for rehire, and that you must contact MPI to resolve the issue."**

108.    Yvonne informed Kerr that she made a note on the file regarding my situation.

109.    Kerr responded to Yvonne that **"BofA is indeed responsible for deciding and recording that I am ineligible for rehire, not MPI, and likewise BofA, not MPI is responsible for telling the employment world that I am not eligible for rehire".**

110.    Incredibly, Yvonne also responded that Kerr's **"rehire status was not BofA's responsibility".**

111.    All BofA agents described herein refused to provide copies of Kerr's records to him.

### KERR CONTACTS MPI TO DISCUSS THE BOFA ISSUE

112.    On August 8, 2017 Kerr contacted MPI and was directed to their agent Samantha Brown ("Brown").

113.    Kerr explained to Brown the situation with BofA described herein.

114.    Brown responded that BofA's view of the issue was odd, and that it didn't make sense.

115.    Brown verified that MPI had no record of any adverse communication from BofA regarding Kerr, Kerr's performance or any other feedback.

116.    Brown promised Kerr that she would consult her supervisors to determine a plan of action to speak with BofA to help resolve this issue.

117.   Brown subsequently promised to seek the help of all of her BofA agent contacts.

118.   Over the course of the next few months, and after several attempts, Brown received no cooperation from her contacts at BofA.

## FURTHER EFFORTS BY KERR TO RESOLVE THE ISSUE

119.   On August 15, 2017 Kerr contacted ER again and was directed to Peter.

120.   Peter told Kerr that the only other option was to go to the HR website and fill out a form to request their legal counsel to review a request to rehire ("Form").

121.   Kerr attempted to examine Form but the website would not show or allow it to be downloaded.

122.   Kerr attempted to access Form by a separate personal computer with a Microsoft Windows operating system, and a separate Apple Mac computer using the Apple OS X operating system and different brands of web browsers on both machines: the BofA Form was still inaccessible by any means.

123.   Kerr's wife, Angelika Hala ("Hala") was visiting relatives in Europe at this time, and Kerr asked her to try to access the Form on BofA's website from computers available there.

124.   Hala was not able to access Form either.

125.   Kerr HR yet again, and was directed to Ivan.

126.   Kerr informed Ivan that the BofA website did not allow Form to be viewed or downloaded.

127.   Ivan stated that he could not help Kerr resolve the issue.

128.   Kerr told Ivan that he was considering pursuing legal action against BofA for causing damage and giving him the run-around.

129.   Ivan said, **"Since you have mentioned legal action I will not discuss this matter with you any further. I am connecting you to our legal counsel."**

130.   Ivan redirected the call to BofA's legal counsel.

131.   BofA's legal counsel representative agent named Brittany told Kerr that she understood his frustration.

132.   Kerr clearly explained the difficulties with accessing or viewing the Form.

133.   Brittany promised to send the Form to Kerr directly by email.

134.   Brittany gave Kerr a case number to be used when communicating with BofA agents going forward.

135.   Kerr never heard from Brittany again.

136.   On January 25, 2018 Kerr called HR again to resolve the issue.

137.   BofA's agent Raven answered and searched for the case number described herein.

138.   Raven acknowledged that the case was still active, and that the system noted that there was an indication that someone explored the ineligibility for rehire issue, but beyond that there was no clarifying or supporting information input beyond that statement.

139.   Kerr's status on his employee record remains as ineligible for rehire.

140.   Kerr requested a copy of the Form again, but Raven refused to send it by email.

141.   Raven instead guided Kerr again through the HR website to access Form while she attempted to do the same simultaneously while they spoke to each other by phone.

142.   Kerr was still unable to access Form and received the exact same error messages as received months before.

143.   Likewise, simultaneously Raven was also unable to access or download Form and received the same error message that Kerr and Hala received at all attempts.

144.   This interaction with Raven was five months after Kerr first reported the issue regarding the Form to BofA.

145.   Raven promised to seek a resolution of the website issue and to personally take charge of Kerr's case and see it through to resolution.

146.   Raven promised to call Kerr back after 2 business days.

147.   Raven never called back.

148.   To determine if anything had happened at BofA since his termination that might have led to the HR database entry, Kerr inquired with Zullo by email.

149.   Zullo responded, **"I don't recall any issues and see no reason why you would be flagged as ineligible for rehire. Feel free to use me as a reference."**

150.   HR should have known that there was a problem with Kerr's employee record.

151.   As a consequence of the aforementioned, Kerr alleges that he has lost approximately $785,620 in gross potential earnings based on his past BofA Pay Rate, without regard to any over-time pay or interest.

152.    The sum of $785,620 equates to Kerr's BofA Pay Rate for the period starting with his termination date, up to and excluding the date of his discovery of harm ("Complaint Period").

153.    Kerr has suffered negligence, deliberate indifference, and defamation by implication at the hands of the Defendant.

154.    As a consequence of Defendants' unlawful actions, Kerr has suffered damages as described herein.

155.    Kerr brings this action to seek redress of BofA's violations of law, which has caused him to suffer damages.

156.    As a remedy, Kerr seeks an update to his employee record to change his status to being eligible for rehire, along with a make-whole payment in the amount of $785,620 which covers the Complaint Period, and any other compensatory or statutory remedies and/or relief available to Kerr.

## CLAIMS AND DAMAGES

Based upon the above allegations, Plaintiff maintains the following legal claims against Defendant:

## COUNT ONE
## (NEGLIGENCE BY DEFENDANT)

157.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

158.    Kerr was an employee as described herein; Kerr was not free to work for other companies for the duration of his contract and termination with BofA.

159.    BofA owed Kerr a duty of care in keeping accurate employee records, regardless of his contractual relationship between MPI and BofA. BofA considered Kerr an employee as evidenced by his record in its employee database.

160.    BofA breached its duty of care by its sloppiness, indifference, incompetence, willful neglect and bizarre denial of responsibility for Kerr's employee record and his employment eligibility status in its own employee database.

161.    As communicated herein, BofA's negligence directly caused Kerr harm.

162.    As a result of BofA's conduct, Kerr has suffered and will continue to suffer substantial damages, including but not limited to loss of employment income and emotional harm.

## COUNT TWO
### (DEFAMATION BY IMPLICATION)

163.    Plaintiff repeats, realleges, and incorporates by reference each and every allegation previously made herein as if the same were more fully set forth at length herein.

164.    BofA has defamed Kerr by implication.

165.    BofA made communications to 3rd parties that Kerr is ineligible for rehire.

166.    BofA's communications were made with negligent disregard for any potential economic or reputational harm to Kerr.

167.    BofA's communications with 3rd parties was defamatory by implication.

168.    BofA's defamation by implication has made it difficult for Kerr to gain employment, which has caused Kerr significant emotional and economic harm.

169.    As a result of BofA's conduct, Kerr has suffered and will continue to suffer substantial damages, including but not limited to loss of employment income and emotional harm.

## **REQUEST FOR RELIEF**

**WHEREFORE**, Plaintiff requests that this Court order the following relief in favor of Plaintiff:

I.      A Declaratory Judgment declaring that the acts complained of herein violates the rights of Plaintiff as guaranteed under applicable Federal Law;

II.     A judgment granting equitable relief directing Defendant to specifically change Plaintiff's status in its HR database to "eligible for rehire" and to cease and desist from communicating to outside 3rd parties, either expressly or implied, that Plaintiff is not eligible for rehire, or any other adverse statements;

III.    A judgment directing Defendant to compensate and make Plaintiff whole for any and all lost earnings without regard to overtime pay or interest, at a minimum equal to his Pay Rate on a full-time employee basis per year for the period commencing with his termination date, up to and including the discovery of his harm, that he would have received from other potential employers, including Defendant, but for Defendant's negligence and indifference;

IV.     A judgment awarding Plaintiff compensatory damages for mental anguish, loss of dignity, humiliation, and injury to livelihood in an amount that is fair, just, and reasonable, to be determined at the Court's discretion;

V.      A judgment awarding Plaintiff punitive damages;

VI.     Such other and further relief that the Court may deem just and proper.

## Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### JURY DEMAND

Plaintiff does **not** demand a trial by jury of any issues in this action.

Dated: New York, New York
       February 16, 2018

Respectfully submitted,

By David Sean Kerr
**Plaintiff in Pro Per**

404 Prospect Ave Apt 2
Brooklyn, New York 11215
Tel.: (917) 523-3267
Email: office@5Rstables.com

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: February 16, 2018.

Signature of Plaintiff

David Sean Kerr

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK



| | |
|---|---|
| **DAVID SEAN KERR,** | **Complaint for a Civil Case** |
| Plaintiff, | Case No. _____ |
| -against- | **Jury Trial:   No** |
| **BANK OF AMERICA CORPORATION,** | |
| Defendant. | |



I.      The Parties to This Complaint

A.      **The Plaintiff**

| | |
|---|---|
| Name | David Sean Kerr |
| Street Address | 404 Prospect Ave Apt 2 |
| City and County | Brooklyn, Kings County |
| State and Zip Code | New York 11215 |
| Telephone Number | (917) 523-3267 |
| E-mail Address | office@5Rstables.com |

B.      **The Defendant**

| | |
|---|---|
| Name | Bank of America Corporation |
| Job or Title | Financial Services and Brokerage |
| Street Address | 100 N. Tryon St. |
| City and County | Charlotte, Mecklenburg County |
| State and Zip Code | North Carolina 28255 |
| Telephone Number | (213) 580-0702 |

### *TO SERVE LEGAL DOCUMENTS TO BANK OF AMERICA:*

| | |
|---|---|
| Name | Bank of America, N.A. |
| Department | Legal Order Processing Department |
| Address | 800 Samoset Drive |
| | Newark, DE 19713 |
| Telephone Number | (213) 580-0702 |

## II.   Basis for Jurisdiction

Diversity of citizenship

The plaintiff, David Sean Kerr is a citizen of the State of New York.

The defendant, Bank of America Corporation is incorporated under the laws of the State of Delaware, and has its principal place of business in the State of North Carolina.

The Amount in Controversy

The amount in controversy—the amount the plaintiff claims the defendant owes or the amount at stake—is more than $75,000, not counting interest and costs of court, because (explain):

PLEASE REFER TO ATTACHED "EXHIBIT"

## III.   Statement of Claim

PLEASE REFER TO ATTACHED "EXHIBIT"

## IV.   Relief

PLEASE REFER TO ATTACHED "EXHIBIT"

## V.   Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for

extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

**A.      For Parties Without an Attorney**

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served.  I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing: February 16, 2018

Signature of Plaintiff      _____

Printed Name of Plaintiff    David Sean Kerr